J. D. JOHNSON v. THE STATE.

No. 18411. Delivered June 17, 1936.

The opinion states the case.

*H. J. Cureton, W. E. Cureton,* and *H. J. Cureton, Jr.,* all of Meridian, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, JUDGE.—The appellant was convicted of the offense of murder with malice aforethought, and his punishment was assessed at confinement in the state penitentiary for a term of ten years.

The testimony, briefly stated, shows that appellant at the time of the alleged offense was conducting a beer saloon and sandwich shop near the Brazos River in Bosque County; that on the afternoon, about three or four hours before the commission of the alleged homicide, two Mexicans, one a large man and the other small, came into appellant's place of business and during said time each drank about four or five bottles of beer. A short time before dark Mr. Dunlap, who was associated with appellant in the business, saw that the Mexicans made themselves obnoxious to other patrons and he asked them to leave, which they failed to do. He then sent for the constable who arrived after dark. Appellant informed the constable that the Mexicans were drunk, that they had invited some of the patrons of his business to drink beer out of the same glass of which they had already consumed a part, and that they talked rather loud. Appellant requested the constable to remove them from the building, but he hesitated to undertake the job by himself and called upon appellant to assist him in arresting them, which request was complied with. The constable accosted the large man and appellant the small one and told them to consider themselves under arrest. Appellant with the small man went out first and soon thereafter two shots were fired. The constable had some difficulty in controlling the large Mexican, and appellant went to his assistance, knocked the Mexican

down, and assisted the constable in handcuffing him. After having subdued him, they, the appellant and the constable, went to look for the smaller one. They found him about one hundred and fifty yards from the saloon, with a bullet wound through his body. The sheriff was notified, who upon his arrival viewed the body, and on his way from the body of the deceased to the beer saloon and about twenty-five steps from it he found a knife approximately ten inches in length.

Appellant plead self-defense, in that deceased was attacking him with a large knife at the time he shot him. He also filed a plea for a suspension of sentence in the event of his conviction. To rebut appellant's theory of self-defense, the State proved that the bullet entered in the back of the deceased just under the shoulder blade and made its exit near the right nipple.

By bill of exception number one appellant complains because the court after instructing the jury on the legal right of a peace officer to arrest without a warrant under certain circumstances and to use such force as was necessary to effect the arrest and to prevent an escape, etc., further instructed them as follows: "But on the other hand defendant would not be justified in killing the deceased in order to effect his arrest or prevent his escape unless from the deceased's conduct at the time and under the circumstances viewed from the defendant's standpoint there was created in the mind of the defendant a reasonable fear for his life or serious bodily injury," etc. Appellant's objection to the quoted part of the charge was that it was a repetition and gave undue emphasis to the State's theory, the effect of which was to cast a doubt on defendant's theory of self-defense inasmuch as the court in submitting the State's theory had already in substance given such an instruction. An examination of the court's charge fails to disclose that the court had given any instruction on the extent of an officer's legal right to make an arrest or prevent an escape, and, therefore, that part of the charge complained of was proper and a necessary guide to the jury whose duty it was to determine whether he, appellant, while acting as a peace officer, remained within or exceeded the limits prescribed by law.

Bill of exception number two reflects the following occurrence. The State placed Polo Cantu upon the witness stand and propounded to him the following question and elicited the following answer: "Was he a good Mexican? A. A good boy." The appellant objected on the ground that the character of the deceased had not been put in issue by the defendant and no

threats had been proven. The court sustained the objection.

Bill of exception number three reflects the following occurrence. The State introduced one John King as a witness and elicited from him that the deceased picked cotton for him and in his judgment he was a pretty good Mexican—to which appellant again objected upon the same grounds stated in bill of exception number two. The court sustained the objection. Notwithstanding the court sustained the objection as shown in bills numbers two and three the State by the improper question to the witness had gotten before the jury the damaging proof complained of. In the case of Keith v. State, 50 Texas Crim. Rep., 63, this court speaking through Judge Davidson said: "The State was permitted, over appellant's objection to introduce evidence that deceased reputation was that of a quiet and peaceable citizen and not a dangerous man. Appellant did not put in evidence the reputation of deceased. This question was raised by several bills of exception, and we deem it unnecessary to review all of them. In cases of this character, the State cannot introduce evidence of the reputation of deceased as being good and law abiding, or inoffensive, unless that reputation has been attacked by the accused." See Puryear v. State, 50 Texas Crim. Rep., 454; Gregory v. State, 94 S. W., 1041; Melton v. State, 83 S. W., 822; Arnwine v. State, 50 Texas Crim. Rep., 477; Pollard v. State, 45 S. W. (2d) 618; Denson v. State, 298 S. W., 604; Martin v. State, 17 S. W. (2d) 1069.

Bill of exception number four reflects the following occurrence. The district attorney on cross-examination of appellant asked him if he was not a professional gambler—to which appellant objected and called the court's attention to the fact that the same thing had theretofore been excluded by the court. Thereupon the district attorney, in the presence and hearing of the jury, said, "That is the reason I am asking that because I know it is admissible." Whereupon the court sustained the renewed objection and admonished counsel for the State not to ask those questions any more. The district attorney contended that he had a legal right to do so, and then the court permitted him to interrogate appellant as to whether he had on said day engaged in any gambling with the Mexicans. To which the district attorney remarked, "I am not going to ask him that. I know what he will say." It seems now to be the well settled rule that notwithstanding the appellant has filed a plea for a suspended sentence, he cannot on cross-examination be interrogated as to specific acts of misconduct not related to the matter under investigation. It is also the settled rule in

this state that when the defendant testifies in his own behalf it is improper for the State to question him as to the specific acts of misconduct which had not been merged into a prosecution; the procedure authorized under such circumstances being to prove the general reputation or to prove that he had been convicted of a felony. In support of the views herein expressed, see Nix v. State, 74 S. W., 764; Elkins v. State, 276 S. W., 291; Fountain v. State, 241 S. W., 489; Johnson v. State, 241 S. W., 484; Skelton v. State, 291 S. W., 238; Elizondo v. State, No. 17,980, decided this term but not yet reported (page 393 of this volume). It is obvious that by the procedure complained of the State got before the jury the good reputation of the deceased and appellant's reputation as a professional gambler. Even though the court sustained appellant's objections it occurs to us that the combined and cumulative effect thereof may have increased the punishment, if so, it injuriously affected appellant.

For the errors herein above pointed out, the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.